UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: <br><br> **ARTHUR MACHINERY, INC.** <br><br> Debtor. | Chapter 11 <br><br> Case No. 09-11787 <br><br> Hon. Carol A. Doyle |

## FINAL ORDER AUTHORIZING POSTPETITION FINANCING

Upon (a) the motion ("Financing Motion") dated April 20, 2009, of Arthur Machinery, Inc. (the "Debtor"), seeking this Court's authorization for the Debtor, inter alia, (i) to obtain postpetition financing up to an aggregate principal amount not to exceed $338,500 plus applicable interest ("Postpetition Financing") from American Chartered Bank ("Lender") and (ii) to grant the Lender an allowed administrative expense claim with respect to the Administrative Advances (as defined below) pursuant to 503(b)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") and requesting that a final hearing be scheduled by this Court to consider entry of a final order ("Final Order") authorizing on a final basis, inter alia, the Postpetition Financing and (b) the motion filed by the Debtor on May 8, 2009 (the "Final Motion" and together with the Financing Motion, the "Motions") seeking the entry of a Final Order expanding the duration and amount of the Postpetition Financing; due and sufficient notice of the Motions having been given; a preliminary hearing on the Financing Motion having been held before this Court on April 27, 2009 (the "Preliminary Hearing"); the Court having entered a Interim Financing Order at that time authorizing the Postpetition Financing (the "Interim Financing Order"); the final hearing on the Motions having

{0964 ORD A0231457.DOC}

been held on May 14, 2009 (the "Final Hearing"); and this Court having found good and sufficient cause appearing therefor;

The Debtor and the Lender STIPULATE for all purposes in this Case (as defined below):

A. On April 2, 2009 ("Filing Date"), the Debtor filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code, and thereby commenced the above-captioned case ("Case"). The Debtor remains in possession of its property, and it continues to operate and manage its business, as Debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

B. This Court has jurisdiction over the Case and the Motions pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motions constitute core proceedings as defined in 28 U.S.C. § 157(b)(2).

C. The Lender, as lender, and Debtor, as borrower ("Borrower"), represent that they are parties to the following loan agreements (collectively, the "Prepetition Loan Agreements"):

| Date | Loan No. | Original Loan Amount | Approx. Balance at Petition Date | Maturity Date |
|---|---|---|---|---|
| 12/5/2006 | 488526011 | $7,000,000 | $5,545,344.30 | 9/3/2008 |
| 4/20/07 | 488526012 | $700,000 | $271,779.36 | 4/20/2010 |
| 1/22/2008 | 488526013 | $37,608.65 | $27,477.12 | 1/22/2012 |
| 1/22/2008 | 488526014 | $37,608.65 | $27,531.83 | 1/22/2012 |
| 1/22/2008 | 488526015 | $36,881.33 | $26,999.42 | 1/22/2012 |
| 7/30/2008 | 488526016 | $42,501.00 | $33,728.89 | 7/30/2011 |

The Lender and the Borrower represent that the Borrower's failure to comply with the covenants regarding the borrowing base and to pay all unpaid amounts due to the Lender under the Prepetition Loan Agreements on the dates such payments were due would constitute an event of default under all of the Prepetition Loan Agreements. True and correct copies of the Prepetition Loan Agreements and related prepetition loan documents (collectively the "Prepetition Loan Documents") were attached to the Financing Motion as Group Exhibit 2 and are incorporated

herein by reference. Unless otherwise specified, all capitalized terms used but not defined herein shall have the meanings given in the Prepetition Loan Documents.

D.     Without prejudice to the rights of any other party (but subject to the limitations and reservations of rights described in ordering paragraph 22 below), the Debtor admits that, in accordance with the terms of the Prepetition Loan Documents, the Borrower is truly and justly indebted to the Lender under the Prepetition Loan Agreements, without defense, counterclaim or offset of any kind, and that as of the Filing Date (i) the Borrower was liable to the Lender in the aggregate principal amount of approximately $6,035,082.74 in respect of loans made by the Lender to the Borrower pursuant to the Prepetition Loan Agreements (plus attorneys' fees, costs and interest accrued and unpaid thereon) ("Prepetition Indebtedness") and (ii) as of the Filing Date, the Debtor, in consideration of the Postpetition Financing to be made under the Commitment, waive and release any and all causes of action and claims against the Lender and its agents, representatives, assigns and successors. The provisions of this paragraph D constitute a stipulation by the Debtor and not a finding by the Court, subject to the provisions and reservations of rights contained in ordering paragraph 22 of this Order.

E.     Without prejudice to the rights of any other party (but subject to the limitations and reservations of rights described in ordering paragraph 22 below), the Debtor further admits that by reason of the Prepetition Loan Documents, the Prepetition Indebtedness is secured by a perfected first priority lien on all assets of Debtor as of the date this case was commenced, specific liens on certain titled motor vehicles and by enforceable security interests in all assets and specific, titled motor vehicles granted by the Borrower to the Lender as of the date this case was commenced, as more specifically described in the Prepetition Loan Documents (the "Prepetition Collateral"). The provisions of this paragraph E constitute a stipulation by the

Debtor and not a finding of the Court, subject to the provisions and reservations of rights contained in ordering paragraph 22 of this Order.

F.  Without prejudice to the rights of any other party (but subject to the limitations and reservations of rights contained in ordering paragraph 22 below), the Debtor further admits that it does not have sufficient available sources of working capital and financing to carry on the operation of its business without the Postpetition Financing. The ability of the Debtor to continue operating as a commercial dealer of new and used specialized manufacturing machinery and tooling, and otherwise finance its operations, is essential to the Debtor's continued viability. In addition, the Debtor's need for financing is immediate and critical. In the absence of the Postpetition Financing, the continued operation of the Debtor's business would not be possible and serious and irreparable harm to the Debtor and its estate would occur. The preservation, maintenance and enhancement of the value of the Debtor's assets are of the utmost significance and importance to a successful liquidation of the Debtor under chapter 11 of the Bankruptcy Code.

G.  Notice of the Preliminary Hearing, the Final Hearing and the relief requested in the Motions has been given to (i) the Office of the United States Trustee, (ii) the Official Committee of Unsecured Creditors ("Committee"); (iii) the creditors holding the 20 largest unsecured claims against the Debtor; and (iv) known holders of prepetition liens against the Debtor's property. The Preliminary Hearing and the Final Hearing have been held pursuant to the provisions of Bankruptcy Rule 4001(c)(2).

H.  Based on the record presented to this Court by the Debtor, it appears (and the Debtor and the Lender have stipulated) that the Postpetition Financing has been negotiated in good faith and at arm's-length between the Debtor and the Lender, and any credit extended and

loans made to the Debtor pursuant to this Order shall be deemed to have been extended, issued or made, as the case may be, in good faith within the meaning of Bankruptcy Code § 364(e).

I.  Based on the record before this Court, it appears (and the Debtor and the Lender have stipulated) that the terms of this Order, including, without limitation, the terms of the Postpetition Financing, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, are supported by reasonably equivalent value and fair consideration, and are in the best interests of the Debtor's estate and creditors.

J.  Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the Preliminary Hearing and the Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1.  Motions Granted. The Motions are granted to the extent provided herein, and subject to the modifications and terms and conditions set forth in this Order; provided, however, the Court's prior emergency and interim financing orders and all of the parties' respective rights and remedies thereunder shall remain unimpaired and unaffected by this Order.

2.  Authorization. The Debtor is expressly authorized and empowered to (a) borrow money from the Lender in an amount not to exceed $747,550, (b) perform its obligations pursuant to the provisions of this Order, and (c) enter into such agreements, instruments and documents (collectively, if any, the "DIP Loan Documents") as may be necessary or required to evidence its obligations to the Lender, to consummate the terms and provisions of this Order; provided that (x) such DIP Loan Documents are consistent with this Order and (z) nothing in this Order shall be deemed to authorize the assumption of the Prepetition Loan Agreements or any "roll-up" or "roll-over" of the Prepetition Indebtedness. All postpetition loans and all other

indebtedness and obligations incurred on or after the Filing Date by the Debtor to the Lender pursuant to this Order and the DIP Loan Documents (including principal, accrued and unpaid interest, and costs and expenses) are referred to herein as the "DIP Indebtedness," and, together with the Prepetition Indebtedness, as the "Indebtedness."

3. **Borrowing.** Subject to the terms and conditions of this Order and the DIP Loan Documents, the Lender will make the Postpetition Financing to the Debtor, in each case in an aggregate amount not to exceed the amount authorized under the Budget (as hereinafter defined).

4. **Existing Events of Default.** Nothing herein or in any of the DIP Loan Documents shall constitute or be deemed to constitute a waiver by the Lender of any existing or future Events of Default (including, without limitation, the Events of Default arising from the commencement of this Case). Without prejudice to, or waiver of, the Lender's rights and remedies against the Debtor in respect of any Events of Default other than the Existing Defaults (as defined below), the Lender agrees to forbear from taking enforcement action against the Debtor based solely on any Event of Default which occurred prior to the entry of this Order and of which the Lender had actual knowledge as of such date (collectively, the "Existing Defaults"); provided that such forbearance shall terminate upon the earlier of (i) the occurrence of any Event of Default other than an Existing Default or (ii) the Loan Maturity Date (as defined below).

5. **Priority and Treatment of Administrative Advances.** With respect to that portion of the DIP Indebtedness incurred in connection with the Debtor's obligations to its bankruptcy counsel and financial advisors and U.S. Trustee fees up to the amounts provided in the Budget (as hereinafter defined) (collectively, the "Administrative Advances"), such Administrative Advances shall be allowed as a chapter 11 administrative expense claim pursuant

to § 503(b) of the Bankruptcy Code. All other DIP Indebtedness incurred by the Debtor shall be deemed an allowed unsecured prepetition claim, but shall not constitute an administrative claim in this case, whether pursuant to 11 U.S.C. § 503 or otherwise. The Administrative Advances shall bear interest at the Prime Rate plus three percent (3%) per annum, provided however that at no time while the Administrative Advances are outstanding shall the interest rate be less than six percent (6%) per annum. Lender will also be entitled to assess and collect a loan fee in the amount of fifty (50) basis points based on the total of the Administrative Advances.

      6.    <u>Termination of Postpetition Credit</u>. The Lender's willingness to make loans hereunder shall immediately and automatically terminate (except as the Lender may otherwise agree in writing in its sole discretion), all Indebtedness shall be immediately due and the Lender shall have the enforcement rights set forth in paragraph 8 hereof (except as the Lender may otherwise agree in writing in its sole discretion) upon the earliest to occur of the following ("<u>Loan Maturity Date</u>"):

      (i)    June 26, 2009;

      (ii)    the effective date of any confirmed plan of reorganization in the Case;

      (iii)    the consummation of the sale or other disposition of all or substantially all of the assets of the Debtor;

      (iv)    the occurrence of any violation by the Debtor of this Order or the Final Order;

      (v)    the dismissal of the Case or the conversion of the Case into a case under Chapter 7 of the Bankruptcy Code;

      (vi)    the appointment of a trustee or an examiner with enlarged powers (beyond those set forth in §§ 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business of the Debtor without the prior written consent of the Lender (which consent may be withheld in its sole discretion), or the Debtor applies for, consents to, or acquiesces in, any such appointment without the prior written consent of the Lender (which consent may be withheld in its sole discretion);

(vii) this Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Lender (which consent may be withheld in its sole discretion);

(viii) this or any other Court enters an order or judgment in the Case modifying, limiting, subordinating or avoiding the priority of any Indebtedness or the perfection, priority or validity of the Lender's prepetition liens;

(ix) an order is entered in the Case granting relief from the automatic stay of Section 362 of the Bankruptcy Code to any holder or holders of a lien on any material collateral in allowing such holder or holders to foreclose or otherwise realize upon such liens; or

(x) any motion or application is filed by or on behalf of the Debtor in the Case seeking the entry of an order, or an order is entered in the Case, approving any subsequent debtor in possession facility for borrowed money or other extensions of credit unless such subsequent facility and such order expressly provide for the indefeasible payment and complete satisfaction in full in cash to the Lender of the Administrative Advances prior to, or concurrently with, any initial borrowings or other extensions of credit under such subsequent facility.

7. <u>Waiver</u>. Subject to the provisions and reservations of rights contained in ordering paragraph 22 hereof, the Debtor and its estate (and any party in interest acting on behalf of the Debtor) hereby irrevocably waive, and are barred from asserting or exercising any right to modify or affect any of the rights of the Lender under this Order or any DIP Loan Documents by any order entered in this or any subsequent or superseding case (including, without limitation, any conversion of the Case to a case under Chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto.

8. <u>Modification of Automatic Stay; Other Remedies</u>.

(a) Subject to the provisions and reservations of rights contained in ordering paragraph 22 hereof, the automatic stay pursuant to § 362 of the Bankruptcy Code is hereby vacated as to the Lender to permit it to, without further application or motion to, or order from, the Court, and regardless of any change in circumstances (whether or not foreseeable) (a) receive and apply payments and proceeds of the Prepetition Collateral, on a provisional basis and

subject to the provisions of paragraph 22 below, to the Prepetition Indebtedness in the manner specified in this Order and the Prepetition Loan Documents, (b) to give the Debtor any notice provided for in any of the DIP Loan Documents or this Order, and (c) upon the occurrence of an Event of Default other than any Existing Default, or upon the Loan Maturity Date, and without application or motion to, or order from the Court or any other court, (i) terminate the Prepetition Loan Agreements and the Postpetition Financing under this Order and the other DIP Loan Documents, (ii) declare all Indebtedness immediately due and payable, (iii) revoke the Debtor's right, if any, under this Order and/or the other DIP Loan Documents to use cash collateral and (iv) cease making loans or other extensions of credit and/or suspend or terminate any obligation of the Lender to make loans or other extensions of credit under the DIP Loan Documents or this Order. Neither § 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the Lender's exercise, enjoyment and enforcement of any the foregoing rights and privileges.

    (b)  Subject to the provisions and reservations of rights contained in ordering paragraph 22 hereof, and upon the occurrence of any Event of Default other than any Existing Defaults, or upon the Loan Maturity Date, the Lender shall be entitled (i) to file an emergency motion for relief from the automatic stay for the purpose of foreclosing or otherwise enforcing its liens on any or all of the Prepetition Collateral and/or to exercise any other default-related remedies under the Prepetition Loan Documents, DIP Loan Documents, this Order or applicable law, and (ii) to obtain an expedited hearing on such motion upon three (3) days' notice to counsel for the Debtor, counsel for any Committee and the U.S. Trustee. The Lender shall be entitled to such relief from the automatic stay upon a showing only that one or more Events of Default (other than any Existing Default) have occurred and are then continuing or that

the Loan Maturity Date has occurred. Upon the entry of an order granting the Lender relief from the automatic stay to enforce its liens or to exercise any other default-related remedies, (i) the Lender may exercise any remedies available to the Lender under this Order and the Prepetition Loan Documents or applicable law, including to foreclose on the Prepetition Collateral, (ii) provided that the Lender in its sole discretion has made available to the Debtor (through additional Postpetition Loans or by consenting to Debtor's use of cash collateral) sufficient funds to pay the costs thereof, the Debtor shall cooperate with the Lender in connection with any enforcement action by the Lender by, among other things, (A) providing access to its premises to representatives of the Lender, (B) providing the Lender access to its books and records, (C) performing all other obligations set forth in the Prepetition Loan Agreements, the Prepetition Loan Documents, this Order and/or the other DIP Loan Documents, and (D) taking reasonable steps to safeguard and protect the Prepetition Collateral until the Lender can make adequate provision to protect and safeguard the Prepetition Collateral, and the Debtor shall not otherwise interfere or encourage others to interfere with the Lender's enforcement of its rights.

    9.    <u>Priority Claims</u> The Administrative Advances portion of the DIP Indebtedness shall have an administrative expense priority pursuant to § 503(b). Nothing in this Order shall constitute the consent by the Lender to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, the Commitment) against the Lender, its claims or its collateral under § 506(c) of the Bankruptcy Code or otherwise.

    10.    <u>Cash Collateral Procedures</u>. From and after the date of the entry of this Order, all cash proceeds of any Prepetition Collateral shall be provisionally applied against the Prepetition Indebtedness as provided in this Order and the Prepetition Loan Documents.

11. <u>Use of Loan and Collateral Proceeds</u>. Except as otherwise provided in this Order, the proceeds of any loans or other extensions of credit made by the Lender to the Debtor pursuant to this Order and the DIP Loan Documents shall be used only as follows: (a) prior to the Loan Maturity Date, pursuant to the budgets attached to the Interim Financing Order and attached hereto as <u>Exhibit A</u> (and as may be amended or supplemented from time to time with the Lender's advance consent (and with at least five (5) business days of advance notice and a corresponding opportunity to file an objection with this Court provided to counsel for the Committee and the United States Trustee), collectively, the "<u>Budget</u>") for the payment of the Debtor's expenses incurred in the ordinary course of business, or any fees and expenses of the Debtor's professionals and (b) on or after the Loan Maturity Date, for the payment of the Debtor's expenses incurred in the ordinary course of business and to the extent of the remaining term of, any applicable Budget. Funds borrowed under this Order shall be used by the Debtor in accordance with this Order. Notwithstanding the foregoing, the Debtor shall be (x) deemed to be in compliance with the Budget so long as its total cash disbursements, on a rolling four-week basis, are less than 110% of the amount provided for in the Budget for each respective four-week period (collectively, the "<u>Variance</u>"); and (y) permitted to pay expenses in the ordinary course of business in accordance with the Budget and the Variance unless and until this Court enters a subsequent order to the contrary. The extension of Postpetition Financing shall not be construed as a commitment to continue to provide Postpetition Financing after the occurrence of an Event of Default (other than the Existing Defaults) or beyond the Loan Maturity Date, regardless of whether the entire Commitment has been expended.

12. <u>Covenants</u>. The Debtor shall timely comply with all of the covenants set forth in the Prepetition Loan Agreements, the Prepetition Loan Documents, this Order (including

compliance with the Budget as set for the in paragraph 11 above) and the other DIP Loan Documents.

13. <u>Application of Collateral Proceeds</u>. All proceeds of Prepetition Collateral shall be applied to the Prepetition Indebtedness, on a provisional basis (in such order as determined by the Lender in its sole discretion) and subject to the terms of paragraph 22 below. The Debtor shall not have the right to direct the manner of application of any payments to the Lender or any other receipts by the Lender of proceeds of any of the Prepetition Collateral other than in the manner set forth in this ordering paragraph and the Prepetition Loan Documents.

14. <u>Non-Ordinary Course Dispositions</u>. No sale, lease or other disposition of Prepetition Collateral outside the ordinary course of business (including any auction or other similar sales) may be done without the Lender's consent or by order of the Court.

15. <u>Books and Records</u>. The Debtor shall permit the Lender, the Committee and any of the authorized representatives designated by the Lender and Committee (including, without limitation, its auditors, appraisers and financial advisors) to visit and inspect any of the properties of the Debtor, including the Debtor's financial and accounting records, and to make copies and take extracts therefrom, and to discuss the Debtor's affairs, finances and business with such Debtor's officers and independent public accountants, at such reasonable times during normal business hours and as often as may be reasonably requested. Without limiting the generality of the foregoing, the Debtor shall promptly provide to the Lender, the Committee and their respective designated representatives any information or data reasonably requested to monitor the Debtor's compliance with the covenants in the Prepetition Loan Agreements and the provisions of the DIP Loan Documents and this Order and to perform appraisals or other valuation analyses of any property of the Debtor.

16.  **Authorized Signatories.**  The signature of Chad Arthur shall bind the Debtor, and no other approval shall be necessary.

17.  **The Lender's Reservation of Rights; No Waiver.**  The Lender does not waive, and expressly reserves, any and all claims, defenses, rights and remedies it has pursuant to any or all of the Prepetition Loan Documents, the DIP Loan Documents, the Bankruptcy Code and/or other applicable law against the Debtor and any officer, director, employee, agent or other representative of the Debtor. In addition, the rights and obligations of the Debtor and the rights, claims, and priorities of the Lender arising under this Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtor, in its prepetition capacity, under the Prepetition Loan Documents. Without limiting the generality of the foregoing, the Lender may petition this Court for any such additional protection it may reasonably require with respect to the Prepetition Indebtedness, the DIP Indebtedness or otherwise, and nothing in this Order constitutes a finding with respect to the adequacy of the protection of the Lender's interests in the Prepetition Collateral.

18.  **Order Binding on Successors.**  The provisions of this Order shall be binding upon and inure to the benefit of the Lender, the Debtor, and its successors and assigns (including any trustee or other estate representative appointed as a representative of the Debtor's estate or of any estate in any Successor Case); provided, however, that the terms of this Order shall not be binding on a chapter 7 trustee except with respect to loans made and expenses incurred prior to the appointment of such chapter 7 trustee. Except as otherwise explicitly set forth in this Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Order or the DIP Loan Documents.

19. <u>Effect of Dismissal or Conversion</u>. If the Case is dismissed, converted, or otherwise superseded, the Lender's rights and remedies under this Order and the DIP Loan Documents shall be and remain in full force and effect as if the Case had not been dismissed, converted or superseded. Furthermore, notwithstanding any such dismissal, conversion or supercission, all of the terms and conditions of this Order shall remain in full force and effect; <u>provided, however</u>, that a subsequently appointed chapter 7 trustee shall not be bound by this Order with respect to loans made after the appointment of such chapter 7 trustee.

20. <u>Releases and Validation of Prepetition Indebtedness and Liens; Allowance of Secured Claim</u>. The release, discharge, waivers and agreements set forth in this ordering paragraph will be deemed effective upon the entry of this Order, subject only to the right of the Committee and any other party in interest to object on the terms and conditions set forth in ordering paragraph 22 below. The Debtor, and its estate, hereby: (a) release and discharge the Lender, together with its affiliates, agents, attorneys, officers, directors and employees from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Prepetition Loan Documents, any aspect of the Prepetition relationship between the Lender and the Debtor, or any other acts or omissions by the Lender in connection with any of the Prepetition Loan Documents or its Prepetition relationship with the Debtor; (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and nonavoidability (under §§ 510, 544, 545, 547, 548, 550, 551, 552 or 553 of the Bankruptcy Code or otherwise) of the Prepetition Indebtedness and the security interests in and liens on the Prepetition Collateral in favor of the Lender (which liens and security interests are first priority subject only to the Prior Claims); and (c) agree, without further Court order and without the need for the filing of any proof of claim, to

the allowance of the prepetition claims of the Lender pursuant to §§ 502 and 506 of the Bankruptcy Code on account of the Prepetition Indebtedness as secured claims according to the Lender's books and records, the principal amount of which is not less than approximately $6.0 million as of the Filing Date, plus accrued prepetition and postpetition interest, fees, expenses and other amounts chargeable under the Prepetition Loan Documents.

21.     *The Lender's Relationship with the Debtor.*  Solely by virtue of making decisions to make any Loans or other extensions of credit to the Debtor, in making any other extensions of credit, or in reasonably administering any Loans, or taking any other actions reasonably related to this Order or the Postpetition Financing, the Lender shall not be liable and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), and the Lender's relationship with the Debtor shall not constitute or be deemed to constitute a joint venture or partnership of any kind between the Lender and the Debtor.

22.     *Objections by Parties in Interest.*  Except as set forth in stipulating paragraphs D and E, in ordering paragraph 24 and in this ordering paragraph, all of the provisions of this Order shall be final and binding on the Debtor and all creditors and other parties in interest. The Committee and any other party in interest other than the Debtor shall have until July 27, 2009 (the "Prosecution Deadline") to file and to serve upon counsel for the Lender objections, claims, causes of action or complaints asserted on behalf of itself, the Debtor and the bankruptcy estate respecting (a) the claims, causes of actions and defenses released by the Debtor pursuant to

{6964 ORD A0231457.DOC}               15

paragraphs 20 and 21 above or (b) the validity, extent, priority, avoidability, or enforceability of the Prepetition Indebtedness or the Lender's prepetition liens on and prepetition security interests in the Prepetition Collateral (the "Reserved Committee Claims"). The entry of this Order shall be deemed a finding and ruling that (i) the Committee has derivative standing to investigate, prosecute and settle the Reserved Committee Claims and (ii) the Reserved Committee Claims are fully preserved for the benefit of the Committee and the bankruptcy estate, notwithstanding the Debtor's proposed release of these claims, so long as such Reserved Committee Claims are brought on or prior to the Prosecution Deadline. In the event that no objections or complaints are filed with this Court and served upon counsel of record for the Lender within the time period set forth above (unless such Prosecution Deadline is extended for cause shown after notice and a hearing upon motion filed prior to the Prosecution Deadline, the provisions of paragraph 20 of this Order shall become final and binding on all such parties.

23. <u>Effect of Modification of Order</u>. The Debtor shall not, without the Lender's prior written consent, seek to modify, vacate or amend this Order or any DIP Loan Documents. If any of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity of any Postpetition Financing outstanding immediately prior to the effective time of such stay, modification or vacation, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such Postpetition Financing. Notwithstanding any such stay, modification or vacatur, any Postpetition Financing outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Order, and the Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities

granted herein, with respect to all such Postpetition Financing. Nothing contained in this paragraph shall modify, limit or negate in any respect the rights and claims reserved to the Committee under ordering paragraph 22 hereof.

24. <u>Safe Harbor</u>. The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtor to obtain credit on the terms and conditions upon which the Debtor and the Lender have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under § 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in § 364(e) of the Bankruptcy Code.

25. <u>Objections Overruled or Withdrawn</u>. All objections to the entry of this Order have been withdrawn or overruled.

26. <u>Controlling Effect of Order</u>. To the extent any provisions in this Order conflict with any provisions of the Motions, any Prepetition Loan Documents or any DIP Loan Documents, the provisions of this Order shall control.

27. <u>Order Effective</u>. This Order shall be effective as of the date of its entry by the Court.

Dated: May 14, 2009

ENTER:

_____
United States Bankruptcy Judge

AGREED TO:

ARTHUR MACHINERY, INC.                    American Chartered Bank


By: /s/ Steven B. Towbin                  By:/s/ Valerie J. Friereich
    One of its attorneys                      One of its attorneys

    Steven B. Towbin (#2848546)           Edmond M. Burke
    Shaw Gussis Fishman Glantz            Joshua S. Hyman
      Wolfson & Towbin LLC                Valerie J. Freireich
    321 North Clark Street, Suite 800     Chuhak & Tecson, P.C.
    Chicago, Illinois 60610               30 S. Wacker Drive
    (312) 541-0151                        Suite 2600
                                          Chicago, Illinois  60606
                                          (312) 444-9300

# EXHIBIT A

## Arthur Machinery Inc.
## Consolidated Cash Flow Statement

| | 1<br>15-May-09 | 2<br>22-May-09 | 3<br>29-May-09 | 4<br>5-Jun-09 | 5<br>12-Jun-09 | 6<br>19-Jun-09 | 7<br>26-Jun-09 | Total |
|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | |
| Collections of Beginning A/R | 181,100 | 359,600 | 13,500 | 62,100 | 145,900 | 531,000 | 712,600 | 2,005,800 |
| Arthur Inventory & Parts Sales (see note) | 190,200 | 220,100 | 220,100 | 220,100 | 220,100 | 220,100 | 534,500 | 1,825,200 |
| Miscellaneous Sales | - | - | - | - | - | - | - | - |
| Sale of Assets | - | - | - | - | - | - | 100,000 | 100,000 |
| Other Receipts | - | - | - | - | - | - | - | - |
| **Total Cash Receipts** | 371,300 | 579,700 | 233,600 | 282,200 | 366,000 | 751,100 | 1,347,100 | 3,931,000 |
| | | | | | | | | |
| **Cash Disbursements - Post Petition** | | | | | | | | |
| Building Expenses | 4,300 | - | 32,150 | 4,300 | - | - | 36,450 | 77,200 |
| Property, Liability & W/C Insurance | - | 17,100 | - | - | - | - | 17,100 | 34,200 |
| Payroll, Taxes & Employee Benefits | 22,200 | 28,150 | 20,000 | 22,650 | 19,800 | 29,750 | 26,100 | 168,650 |
| Professional Services | 50,000 | - | - | - | 50,000 | - | - | 100,000 |
| Other Disbursements | 3,300 | 3,300 | 3,300 | 9,200 | 3,300 | 3,300 | 3,300 | 29,000 |
| **Total Cash Disbursements - Post-Petition** | 79,800 | 48,550 | 55,450 | 36,150 | 73,100 | 33,050 | 82,950 | 409,050 |
| | | | | | | | | |
| **Net Cash Flow** | 291,500 | 531,150 | 178,150 | 246,050 | 292,900 | 718,050 | 1,264,150 | 3,521,950 |
| | | | | | | | | |
| **Accumulated Cash Flow** | 291,500 | 822,650 | 1,000,800 | 1,246,850 | 1,539,750 | 2,257,800 | 3,521,950 | |

Note: Part sales include Haas Automation, Inc. parts located at the Elk Grove Village location that may be in dispute.