**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **In re** | Chapter 11 |
| | Case No. 09-11787 |
| **ARTHUR MACHINERY, INC.,** | Hon. Carol A. Doyle |
| **Debtor.** | Hearing Date: November 30, 2010 |
| | Hearing Time: 10:30 a.m. |

## NOTICE OF MOTION

TO:    See Attached Service List

PLEASE TAKE NOTICE that on **November 30, 2010 at 10:30 a.m.** or as soon thereafter as counsel may be heard, I shall appear before the Honorable Carol A. Doyle, Bankruptcy Judge, in the room usually occupied by her as a Courtroom in the U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois, Room 742, or in her absence, before such other Judge who may be sitting in her place and stead and hearing bankruptcy motions, and shall then and there present the **Fifth and Final Fee Application of Shaw Gussis Fishman Glantz Wolfson & Towbin LLC as Bankruptcy Counsel for Allowance of Compensation and Reimbursement of Expenses, Limited Notice Thereof and Related Relief** a copy of which is attached and herewith served upon you, and shall pray for the entry of an order in conformity with the prayer of said pleading.

**AT WHICH TIME AND PLACE** you may appear if you so see fit.

                                                                    Steven B. Towbin
                                                                    Ira Bodenstein
                                                                    John Guzzardo
                                                                    Shaw Gussis Fishman Glantz
                                                                      Wolfson & Towbin LLC
                                                                    321 North Clark Street, Suite 800
                                                                    Chicago, Illinois 60654
                                                                    (312) 541-0151

## CERTIFICATE OF SERVICE

John Guzzardo certifies that she caused to be served a true copy of the above and foregoing notice and attached pleadings upon the attached Service list in the manner so indicated on this 8th day of November 2010.

                                                                                     */s/ John Guzzardo*

{6964 APPL A0275772.DOC}

**Electronic Mail Service List**

- Howard L. Adelman    hla@ag-ltd.com
- Janice A Alwin    janice.alwin@bfkn.com
- Terence G Banich    tbanich@shawgussis.com, mcarter@shawgussis.com
- Ira Bodenstein    ibodenstein@shawgussis.com
- Jeffrey Chang    jchang@wildman.com
- Dennis A Dressler    ddressler@dresslerpeters.com
- Kevin C. Driscoll    kevin.driscoll@btlaw.com, kmatsoukas@btlaw.com
- Andrew B Fuller    andrewfuller934@hotmail.com
- Elizabeth M Groncki    bgroncki@howardhardyman.com
- John W Guzzardo    jguzzardo@shawgussis.com
- Stephanie Hor    shor@vedderprice.com, ecf_docket@vedderprice.com;jwilson@vedderprice.com
- Christina K Judd    ckjlaw@mchsi.com
- David A. Kallick    dkallick@tishlerandwald.com
- William T Neary    USTPRegion11.ES.ECF@usdoj.gov
- Mary E Olson    molson@wildman.com
- Patricia E. Rademacher    prademacher@costonlaw.com, jrojas@costonlaw.com;vivers@costonlaw.com;amuchoney@costonlaw.com
- Mark L Radtke    mradtke@shawgussis.com, bharrington@shawgussis.com
- Nathan Q. Rugg    nqr@ag-ltd.com
- Marylynne K Schwartz    mschwartz@shawgussis.com, bharrington@shawgussis.com
- Steven B Towbin    stowbin@shawgussis.com
- Jonathan W. Young    young@wildman.com, srodriguez@wildman.com;ecf-filings@wildman.com

**Manual Service List**

The following parties have been served via prepaid, first-class U.S. Mail:

CNC Associates, Inc
c/o SPENCER & MULALLY
14146 Magnolia Blvd., Suite 200
Sherman Oaks, CA 91423

Simon Kimmelman
Sills Cummis and Gross P.C.
650 College Road East
Princeton, NJ 08540

Wildman Harrold Allen & Dixon
225 W Wacker Dr
Chicago, IL 60606

Chad Arthur
555 Ruskin Drive
Elk Grove Village, Illinois 60007

Robert Arthur
3203 Bayshore Boulevard, #1502
Tampa, FL 33629

Richard X. Fisher
The Fisher Law Firm
7 Butera Lane
South Barrington, Illinois  60010

Scott R. Clar
135 South La Salle Street
Chicago, Illinois 60603

{6964 APPL A0275772.DOC}                    2

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re<br><br>**ARTHUR MACHINERY, INC. ,**<br><br>        Debtor. | Chapter 11<br>Case No. 09-11787<br>Hon. Carol A. Doyle<br><br>Hearing Date:  November 30, 2010<br>Hearing Time:  10:30 a.m. |

**FIFTH AND FINAL FEE APPLICATION OF SHAW GUSSIS FISHMAN GLANTZ
WOLFSON & TOWBIN LLC AS BANKRUPCY COUNSEL FOR ALLOWANCE
OFCOMPENSATION AND REIMBURSEMENT OF EXPENSES,
<u>LIMITED NOTICE THEREOF AND RELATED RELIEF</u>**

  Shaw Gussis Fishman Glantz Wolfson & Towbin LLC (collectively, "Shaw Gussis") applies to this Court pursuant to 11 U.S.C. §§ 330 and 331, Rules 2002(a)(6), 2002(i), 2016(a), 9006(c)(1) and 9007 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 5082-1 for: (i) the final allowance of $70,481.50 in compensation for approximately 200 hours of professional services rendered by Shaw Gussis as general bankruptcy counsel to the Debtor for the period beginning July 1, 2010 through and including November 3, 2010 (the "Final Allowance Period"), and the reimbursement of $539.05 for actual costs incurred incident to those services; (ii) final approval of interim compensation and expense reimbursement previously applied for and awarded by this Court on an interim basis for the period April 2, 2009 through June 30, 2010 (the "Interim Allowance Period"); and (iii) a determination that the notice provided is adequate and that further notice of the hearing on this application ("Application") be waived.  In support of this Application, Shaw Gussis states as follows:

**BACKGROUND**

  1. The Debtor operated as a commercial dealer of new and used specialized manufacturing machinery and tooling.  Starting in 2008, the Debtor began to experience increasing cash flow constraints.  Industry trends, including a decline in the manufacturing

{6964 APPL A0275772.DOC}

industries and higher operating costs, substantially contributed to the Debtor's financial difficulties. Due to these and other conditions, the Debtor's financial strength deteriorated, its operating flexibility eroded accordingly, and on April 2, 2009 (the "Petition Date") the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.  Although the Debtor explored other restructuring and financing plans, it ultimately decided to sell its assets through a chapter 11 liquidation. The Debtor believed that the chapter 11 process provided the most efficient platform to maximize the value of its assets through competitive bidding procedures, the relief available under 11 U.S.C. § 365, and the protection that buyers are afforded under 11 U.S.C. § 363.

3.  On April 15, 2009, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

4.  Shortly after the Petition Date, the Debtor applied to this Court for an order approving the retention of Shaw Gussis as the Debtor's bankruptcy counsel. [Dkt. No. 15]. On April 29, 2009, this Court entered an order authorizing the Debtor to retain Shaw Gussis as its general bankruptcy counsel. [Dkt. No. 48].

5.  For reasons set forth in the Debtor's Motion to Approve Compromise with American Chartered Bank ("ACB") and the Committee, filed October 18, 2010 [Dkt. No. 416] (the "ACB Settlement Approval Motion"), and the motion to dismiss filed concurrently with this Application, the Debtor anticipates the dismissal of this chapter 11 case.

6.  This Court has core jurisdiction to hear and resolve this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## **GENERAL STATUS OF THE CASE**

7. Among other things, the following results have been accomplished:

(a) American Chartered Bank ("ACB") has provided the Debtor with debtor in possession financing to enable the orderly liquidation of the Debtor's assets.

(b) Eighteen separate adversary proceedings have been filed to collect the Debtor's accounts receivable. All eighteen adversary proceedings have been settled or dismissed resulting in a total recovery of approximately $329,078. One of these adversary proceeding settlements provided for scheduled payments, with the final payment due in February of 2011.

(c) Seventeen separate adversary proceedings have been filed to recover over $3,000,000 in preferential transfers. The machines repossessed by Haas have been recovered and sold for the benefit of the Debtor's estate for over $660,000. All preference adversaries have settled or been dismissed, collecting over $651,970.37 for the estate, and two default judgments totaling $396,165.52 have been entered.

(d) A machine, which ultimately sold at auction for over $130,000, was recovered from Long Screw.

(e) All of the Debtor's equipment and inventory has been liquidated through a series of auctions and private sales. The proceeds of these sales exceed $3,000,000.

(f) The Debtor's plan of liquidation and disclosure statement have been filed, although, in light of the resolution of the Committee's adversary proceeding against ACB, as more fully described herein, the Debtor, the Committee and ACB have subsequently determined that dismissal of the main bankruptcy case is a more appropriate course of action.

(g) The lease of the Debtor's warehouse and office space was rejected and substantially all of the Debtor's overhead costs were eliminated.

(h) The Committee has taken 2004 exams of the Debtor's principals. In conjunction with these examinations the Debtor has produced over 10,000 pages of documents.

(i) Star CNC Tool Corp's ("Star") administrative / reclamation claim for over $2,500,000 was withdrawn. The Star preference litigation, as more fully described herein, has been settled and resolved in full.

{6964 APPL A0275772.DOC}  3

**SERVICES RENDERED BY SHAW GUSSIS**

8.  In evaluating this Application, this Court should consider the extent and value of the services rendered by Shaw Gussis on behalf of the Debtor, the opposition encountered by Shaw Gussis in pending litigation, the nature and complexity of the issues presented, the skill required to perform the legal services properly, the customary fees charged by other professionals in this case and in similar cases, the experience and ability of the attorneys involved and the amounts awarded in similar cases. These factors support an award of the requested compensation in full.

9.  Throughout the Application Period, Shaw Gussis rendered 199.8 hours of professional services to the Debtor having an aggregate value of $70,481.00 for an average hourly rate of approximately $352.75 billable to the Debtor. All of the services for which compensation is requested were services that, in Shaw Gussis's billing judgment, were necessarily rendered after due consideration of the expected costs and anticipated benefits of such services.

10. In an effort to provide the Court and parties in interest with understandable information concerning the amount and nature of Shaw Gussis's services during the Application Period, and in compliance with Local Bankruptcy Rule 5082-1, Shaw Gussis has classified its services into nine separate categories of services as follows:

| Description | Total Hours | Total Fees Incurred | Average Hourly Rate |
|---|---|---|---|
| Case Administration | 35 | $12,525.50 | $357.87 |
| Cash Collateral/DIP Financing | 19.3 | $8,671.00 | $449.27 |
| Collection of Accounts | 7.9 | $3,002.00 | $380.00 |
| Fee Applications | 45.7 | $13,720.00 | $300.21 |
| Plan of Reorganization/Disclosure Statement | 2.2 | $883.50 | $401.59 |
| Preferences | 20.4 | $6,158.00 | $301.86 |
| Sale of Assets | 6.8 | $2,632.00 | $387.05 |

{6964 APPL A0275772.DOC}            4

| | | | |
|---|---|---|---|
| Star/Long Screw Litigation | 33.6 | $11,346.00 | $337.67 |
| American Chartered Bank Settlement | 23.6 | $9,386.50 | $397.71 |
| Creditors and Claims | 2.80 | $1,261.00 | $450.35 |
| General Investigation | 2.50 | $896.00 | $358.40 |
| **TOTAL** | **199.8** | **$70,481.50** | **$352.75** |

11.    Detailed invoices (the "Invoices") for each time category are attached as Exhibit A to this Application. The following is a separate description of each of Shaw Gussis's principal categories of activities, which generally describe the tasks performed. The Invoices provide detailed descriptions of all services rendered in each of the above categories and the timekeeper, date and amount of time expended in each category. Summary charts for each category setting forth each professional who rendered services, total time and value of services and the total dollar value are provided herein.

    A.    **Case Administration**

12.    Shaw Gussis expended 35 hours of professional services having a value of $12,525.50 in services pertaining to the administration of the Debtor's case, including, among other things: (a) reviewing monthly operating reports; (b) coordinating the destruction of records; (c) administrating client funds accounts and accounts held for the benefit of ACB; and (d) the research, drafting and filing of the motion to dismiss this chapter 11 case.

13.    Furthermore, for administrative convenience, an estimated 1.5 hours of time for Mr. Bodenstein and an estimated 2.0 hours of time for Mr. Guzzardo (the "Projected Hours") have been added and incorporated under this category. The Projected Hours are a very conservative estimate of the remaining services that will be required to attend the hearings on the motion to dismiss this chapter 11 case, present this Application and the fee application of High Ridge Partners, and perform administrative tasks relating to the Motion to Dismiss and – the final tasks remaining in this bankruptcy case.

{6964 APPL A0275772.DOC}   5

14. The chart below is a summary of the total amount of time entered by each timekeeper during the Application Period, as well as the corresponding dollar value of those services.

| Professional | Hours | Hourly Rate | Amount |
|---|---|---|---|
| Steven B. Towbin | 3.4 | $600.00 | $2,040.00 |
| Ira Bodenstein | 7.9 | $475.00 | $3,752.50 |
| Terence G. Banich | .6 | $380.00 | $228.00 |
| John Guzzardo | 21.1 | $290.00 | $6,119.00 |
| Marylynne Schwartz | .4 | $245.00 | $98.00 |
| Melissa Westbrook | 1.6 | $180.00 | $288.00 |

B. **Cash Collateral/DIP Financing**

15. Shaw Gussis expended 19.3 hours of professional services having a value of $8,671.00 in services pertaining to the negotiation of DIP financing and related cash collateral issues, including, among other things: (a) drafting, filing, and presenting a motion to use cash collateral; (b) reviewing the monthly budgets; and (c) negotiations and coordination with ACB regarding collateral liquidation and the turnover of funds held by the Debtor for ACB's benefit.

16. The chart below is a summary of the total amount of time entered by each timekeeper during the Application Period, as well as the corresponding dollar value of those services.

| Professional | Hours | Hourly Rate | Amount |
|---|---|---|---|
| Steven B. Towbin | 2.1 | $600.00 | $1,260.00 |
| Ira Bodenstein | 13.9 | $475.00 | $6,602.50 |
| Marylynne Schwartz | 3.3 | $245.00 | $808.50 |

C. **Collection of Accounts**

17. Shaw Gussis expended 7.9 hours of professional services having a value of $3,002.00 in services pertaining to assisting the Debtor with the collection of account receivables, including, among other things: (a) communicating with the Debtor and the Debtor's

account debtors regarding account receivable collections; (b) investigating account debtors' factual defenses; (c) negotiating, drafting, filing and presenting various settlement agreements between the Debtor and the Debtor's account debtors; and (d) attending omnibus status hearings.

18.     The chart below is a summary of the total amount of time entered by each timekeeper during the Application Period, as well as the corresponding dollar value of those services.

| Professional | Hours | Hourly Rate | Amount |
|---|---|---|---|
| Terence G. Banich | 7.9 | $380.00 | $3002.00 |

### D.     Fee Applications

19.     Shaw Gussis expended 45.7 hours of professional services having a value of $13,720.00 in services pertaining to (a) the drafting, filing and presentment of High Ridge Partners' and Shaw Gussis' fee applications; and (b) reviewing the Wildman fee application and communicating with Wildman regarding their fee application.

20.     The chart below is a summary of the total amount of time entered by each time keeper during the Application Period, as well as the corresponding dollar value of those services.

| Professional | Hours | Hourly Rate | Amount |
|---|---|---|---|
| Ira Bodenstein | 6.3 | $475.00 | $2992.50 |
| Terence G. Banich | .8 | $380.00 | $304.00 |
| John W. Guzzardo | 17.9 | $290.00 | $5191.00 |
| Marylynne Schwartz | 20.7 | $245.00 | $5071.50 |

### E.     Plan of Reorganization and Disclosure Statement

21.     Shaw Gussis expended 2.2 hours of professional services having a value of $883.50 in services pertaining to the Plan of Reorganization and Disclosure Statement. These services pertained to the review of liquidation analyses and the preparation for and attendance of status hearings in September of 2010, as directed by this Court and pursuant to this Court's order of July 28, 2009 (Dkt. No. 163).

{6964 APPL A0275772.DOC}                    7

Case 09-11787    Doc 429    Filed 11/08/10    Entered 11/08/10 17:07:33    Desc Main
Document      Page 11 of 20

22. The chart below is a summary of the total amount of time entered by each timekeeper during the Application Period, as well as the corresponding dollar value of those services.

| Professional | Hours | Hourly Rate | Amount |
|---|---|---|---|
| Ira Bodenstein | .5 | $475.00 | $237.50 |
| Terence G. Banich | 1.7 | $370.00 | $629.00 |

  F. **Preferences**

23. Shaw Gussis expended 20.4 hours of professional services having a value of $6,158.00 in services pertaining to analyzing and prosecuting potential transfers that may be recovered for the benefit of the creditors of the Debtor's estate, including, among other things: (a) communicating with the Debtor regarding document and data collection and production; (b) negotiating, drafting, filing and presentment of various settlement agreements between the Debtor and various preference defendants; (c) researching and executing various post-judgment collection strategies; and (d) preparing for and attending preference omnibus hearings. The "Preference" category also includes services sub-categorized as "Haas Preference," all of which relate to the settlement and resolution of the preference action with Haas Automation, Inc.

24. The chart below is a summary of the total amount of time entered by each timekeeper during the Application Period, as well as the corresponding dollar value of those services.

| Professional | Hours | Hourly Rate | Amount |
|---|---|---|---|
| Steven B. Towbin | .8 | $600.00 | $480.00 |
| Ira Bodenstein | 1.3 | $475.00 | $617.50 |
| Terence G. Banich | 1 | $380.00 | $380.00 |
| John W. Guzzardo | 11.7 | $290.00 | $3,393.00 |
| Marylynne Schwartz | 4.3 | $245.00 | $1,053.50 |
| Melissa Westbrook | 1.3 | $180.00 | $234.00 |

{6964 APPL A0275772.DOC}    8

## G. Sale of Assets

25. Shaw Gussis expended 6.8 hours of professional services having a value of $2,632.00 in services pertaining to the sale of the Debtor's assets, including, among other things: (a) communicating with Debtor's representative regarding FAC Consolidated's sale of estate property; and (b) drafting of legal documents for the proposed sale of certain Ingersoll machines.

26. The chart below is a summary of the total amount of time entered by each timekeeper during the Application Period, as well as the corresponding dollar value of those services.

| Professional | Hours | Hourly Rate | Amount |
|---|---|---|---|
| Ira Bodenstein | 4.2 | $475.00 | $1995.00 |
| Marylynne Schwartz | 2.6 | $245.00 | $637.00 |

## H. Star/Long Screw Litigation

27. Shaw Gussis expended 33.6 hours of professional services having a value of $11,346.00 in services pertaining to the Star/Long Screw litigation. The Star litigation began when Star filed a $2.9 million reclamation claim against the Debtor. Shaw Gussis responded by performing legal research and producing a memo highlighting the flaws in Star's claim. After discussions with Star's attorneys regarding the lack of a factual or legal basis for the claim, Star withdrew its $2.9 million reclamation claim.

28. Shaw Gussis subsequently: (a) filed a $750,000 preference recovery action against Star; (b) demanded an accounting from Star to determine the amounts Star received from the Debtor's customers; (c) filed suit against Long Screw for a determination of the extent and priority of Star's interest in one of Long Screw's machines; and (d) filed a third party claim against Star for an indemnity in Long Screw's breach of warranty claim. Star's answer included nine affirmative defenses and six counterclaims. Essentially, Star asserted that it had a purchase money security interest on all of the Debtor's Star machine inventory and all amounts collected

by the Debtor for that inventory.  Only after the review and production of documents, the filing of a motion to compel, and a motion for sanctions, did Shaw Gussis finally receive the discovery it required to proceed with the Star litigation.

29. Shaw Gussis subsequently filed a motion for partial summary judgment which resulted in Star's withdrawal of numerous affirmative defenses and counterclaims.  Star later amended its answer to add new affirmative defenses and a new counterclaim.  Star's amended answer essentially argued that the machines at issue were not property of the Debtor's estate.  Star's new legal theories of consignment and agency required yet another round of discovery, complete with a new round of discovery disputes. The Debtor and Star engaged in extensive discovery and good-faith settlement negotiations, and then agreed to reduce the contested factual and legal issues that remain in the adversary proceeding and proceed to trial on the value of certain transferred machines and the applicability of 11 U.S.C. § 550 or other law.  On May 27, 2010, the Court approved the Debtor's partial compromise with Star, in which Star agreed to release its right to over $400,000 in proceeds.  The parties proceeded with a new round of discovery on the limited remaining issues.

30. After the exchange and review of additional discovery, the parties did come to an agreement and resolved the remaining outstanding issues.  This Court approved the settlement between Star and the Debtor on September 30, 2010 [Dkt. No. 410].

31. During the Application Period, Shaw Gussis's services involved, among other things:  (a) responding to discovery requests and gathering and organizing discovery sent from Star; (b) issuing discovery requests and producing documents; (c) research of and discussions with potential consulting and testifying expert witnesses; and (d) negotiating, researching, drafting, filing, and presenting the final Star settlement motion.

32. The chart below is a summary of the total amount of time entered by each timekeeper during the Application Period, as well as the corresponding dollar value of those services.

| Professional | Hours | Hourly Rate | Amount |
|---|---|---|---|
| Steven B. Towbin | 3.1 | $600.00 | $1,860.00 |
| Terence G. Banich | 8.5 | $380.00 | $3,230 |
| John W. Guzzardo | 22 | $290.00 | $6,380,00 |

   I.   **American Chartered Bank Settlement**

33. Shaw Gussis expended 23.6 hours of professional services having a value of $9,386.50 in services pertaining to the American Charted Bank Settlement. The American Chartered Bank Settlement began when ACB, pursuant to various post-petition financing orders, asserted that it held an administrative expense claim in the amount of approximately $600,000 in connection with the Debtor's use of cash collateral as authorized periodically by the Court (the "ACB Administrative Expense Claim"). Furthermore, on November 5, 2009, the Committee filed its complaint against ACB styled as *Official Committee of Unsecured Creditors of Arthur Machinery, Inc. v. American Chartered Bank*, (*In re Arthur Machinery, Inc.*) Adv. P. No. 09-001136 (the "Adversary Proceeding"). In the Adversary Proceeding, the Committee sought to setoffs of recoveries pursuant to 11 U.S.C. § 553(b); avoid security interests and liens pursuant to 11 U.S.C. §§ 544, 547 and 550; and disallow ACB's claims. The Debtor also asserted it possesses a claim against ACB, under 11 U.S.C. § 506(c), for the reasonable, necessary costs and expenses of preserving and disposing of certain of the Debtor's assets for the benefit of ACB in an amount in excess of $300,000.00 (the "506(c) Recovery").

34. During the Application Period, Shaw Gussis entered into discussions and negotiations with ACB and the Committee regarding the agreement that is the subject of the ACB Settlement Approval Motion (the "ACB Agreement") and the budget and wind-down of

{6964 APPL A0275772.DOC}                                11

the Debtor. Shaw Gussis also drafted and negotiated the ACB Agreement and ACB Settlement Approval Motion.

35. The chart below is a summary of the total amount of time entered by each timekeeper during the Application Period, as well as the corresponding dollar value of those services.

| Professional | Hours | Hourly Rate | Amount |
|---|---|---|---|
| Steven B. Towbin | 3.1 | $600.00 | $1,860.00 |
| Ira Bodenstein | 9.6 | $475.00 | $4,560.00 |
| Terence G. Banich | .1 | $380.00 | $38.00 |
| John W. Guzzardo | 10.8 | $290.00 | $3132.00 |

**Summary of Services Rendered By Professional**

36. In summary, the total compensation sought for each professional with respect to the aforementioned categories is as follows:

| Professional | Position | Hourly Rate | Billed Hours | Amount |
|---|---|---|---|---|
| Steven B. Towbin | Member | $600.00 | 12.1 | $7,260.00 |
| Ira Bodenstein | Member | $475.00 | 45.8 | $21,755.00 |
| Terence G. Banich | Member | $380.00 | 22.7 | $8,626.00 |
| John W. Guzzardo | Associate | $290.00 | 83.5 | $24,650.00 |
| Marylynne Schwartz | Associate | $245.00 | 31.3 | $7,668.50 |
| Melissa A. Westbrook | Paralegal | $180.00 | 2.9 | $522.00 |

37. The hourly rates charged by Shaw Gussis with respect to its legal services compare favorably with the rates charged by other Chicago metropolitan firms having attorneys and paralegals with similar experience and expertise as the Shaw Gussis professionals. Further, the amount of time spent by Shaw Gussis with respect to the Debtor's case is reasonable given the difficulty of the issues presented, the time limits imposed by the circumstances, the amounts

at stake, the sophistication and experience of opposing counsel, and the ultimate benefit to the estate.

38.     Shaw Gussis has conscientiously attempted to avoid having multiple attorneys convene on behalf of the Debtor.  In certain circumstances, however, it was necessary for more than one Shaw Gussis attorney to confer or appear at the same time.  When possible, Shaw Gussis had one attorney handle multiple matters.  On certain occasions, however, Shaw Gussis had more than one attorney attend a meeting to strategize on issues that had particular import on multiple areas of the Debtor's case.  To the greatest extent possible, meetings, court appearances, negotiations, and other matters were handled on an individual basis.

39.     The issues presented in the Debtor's case have been legally and factually complex, and the amounts at stake significant.  Given the criteria set forth in 11 U.S.C. § 330, namely: (i) the nature, extent and value of the services; (ii) the time spent; (iii) the rates charged for such services; (iv) the performance of the services within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed; and (v) the reasonableness of the services based on the compensation charged by comparably skilled practitioners in other bankruptcy and non-bankruptcy matters, Shaw Gussis respectfully submits that the requested interim compensation represents a fair and reasonable amount that should be allowed in full.

## EXPENSES

40.     The aggregate amount of expenses for which reimbursement is being sought is $1,792.02. All of the expenses for which reimbursement is requested are expenses which Shaw Gussis customarily recoups from all of its clients.  An itemization of the expenses is attached hereto as <u>Exhibit A</u>.  The types of costs for which reimbursement is sought are listed below:

| Internal Photocopy | 10¢ per page |
|---|---|
| Commercial Photocopy | actual cost |

{6964 APPL A0275772.DOC}                    13

| | |
|---|---|
| Commercial Messenger | actual cost |
| Conference Calls | actual cost |
| Pacer | actual cost |
| Postage | actual cost |
| Overnight Delivery (*e.g.*, Federal Express) | actual cost |
| Process Serving | actual cost |
| Local and Long Distance Travel | actual cost |

41. The specific expenses for which reimbursement is requested during the Application Period are as follows:

| | |
|---|---|
| Photocopy | $220.48 |
| Commercial Messenger | $5.66 |
| Pacer | $118.60 |
| Postage | $85.54 |
| Overnight Delivery (*e.g.*, Federal Express) | $83.33 |
| Local and Long Distance Travel | $41.00 |
| **Total** | **$539.05** |

42. All expenses incurred by Shaw Gussis incidental to its services were customary and necessary expenses. All expenses billed to the Debtor were billed in the same manner as Shaw Gussis bills non-bankruptcy clients. Further, the expenses for which reimbursement is sought constitute the types and amounts previously allowed by bankruptcy judges in this and other judicial districts.

### PAYMENTS RECEIVED BY SHAW GUSSIS TO DATE

43. To date, Shaw Gussis has not received any compensation for its services to the Debtor during the Final Allowance Period. Prior to the Petition Date, the Debtor paid Shaw Gussis a retainer in the aggregate amount of $90,000, of which $75,331.46 remained as of the Petition Date (the "Retainer").

44. On September 3, 2009, the Court entered an order approving Shaw Gussis' First Interim Fee Application and allowing Shaw Gussis a total of $214,200.18 for fees and expenses. [Dkt. No. 226]. Shaw Gussis applied $35,331.46 of the Retainer to the requested interim

{6964 APPL A0275772.DOC}    14

compensation and expense reimbursement. The Debtor has since paid Shaw Gussis the remaining balance allowed by this Court.

45. On November 5, 2009, the Court entered an order approving Shaw Gussis' Second Interim Fee Application and allowing Shaw Gussis a total of $251,783.19 for fees and expenses. [Dkt. No. 271] (the "Second Fee Application"). Shaw Gussis applied the balance of the Retainer to the fees and expenses allowed under the Second Interim Fee Application. The source of payment for the allowed fees of the Second Fee Application was American Chartered Bank's cash collateral, including the proceeds from inventory sales and the collection of accounts receivable.

46. On February 23, 2010, the Court entered an order approving Shaw Gussis' Third Interim Fee Application and allowing Shaw Gussis a total of $120,854.44 for fees and expenses. [Dkt. No. 312] (the "Third Fee Application"). Half of the fees and expenses allowed from the Third Fee Application were paid from ACB's cash collateral. The other half were paid from unencumbered funds of the Debtor's estate. The Debtor has paid this amount in full.

47. On August 31, 2010, the Court entered an order approving Shaw Gussis' Fourth Interim Fee Application and allowing Shaw Gussis a total of $171,585.08 for fees expenses [Dkt. No. 400] (the "Fourth Fee Application"). Half of the fees and expenses allowed from the Fourth Fee Application were paid from ACB's cash collateral. The other half were paid from unencumbered funds of the Debtor's estate. The Debtor has paid this amount in full.

48. In the Interim Allowance Period, Shaw Gussis has received $758,422.89 in payment from the Debtor in connection with Shaw Gussis' services and reimbursement for expenses in this bankruptcy case (the "Previously Allowed Fees and Expenses"). No objections have ever been filed as to any of the Previously Allowed Fees and Expenses.

## SOURCE OF FUNDS TO PAY SHAW GUSSIS' FEES AND EXPENSES

49. The fees and expenses allowed for the Final Allowance Period will be paid from unencumbered funds of the Debtor's estate. Previously Allowed Fees and Expenses have been paid pursuant to various post-petition financing orders entered by this Court.

## COMPLIANCE WITH 11 U.S.C. § 504

50. Other than as provided for and allowed by 11 U.S.C. § 504, there is no agreement between Shaw Gussis and any other firm, person or entity for the sharing or division of any compensation payable to Shaw Gussis.

## NOTICE

51. The Debtor has provided notice of the hearing on this motion to the Debtor, the Committee, the Office of the United States Trustee, ACB, and other parties requesting notice in this case. In light of the nature of the relief requested, and the expense of serving this Motion on all creditors, the Debtor requests that this Court find the notice provided for herein sufficient under the circumstances and waive and dispense with any further notice requirements pursuant to FED. R. BANKR. P. 2002(a)(6), 2002(i), and 9007.

WHEREFORE, Shaw Gussis requests the entry of an order, substantially in the form attached hereto, that:

1) Allows Shaw Gussis $70,481.50 in compensation for the Final Allowance Period.

2) Allows Shaw Gussis $539.05 in expense reimbursement for the Final Allowance Period.

3) Authorizes the Debtor to pay Shaw Gussis $71,020.55.

4) Approves on a final basis all Previously Allowed Fees and Expenses awarded by this Court during the Interim Allowance Period.

{6964 APPL A0275772.DOC}    16

5) Waives other and further notice of the hearing with respect to this Application.

6) Provides Shaw Gussis with such additional relief as may be appropriate and just under the circumstances.

                        Respectfully submitted,

                        SHAW GUSSIS FISHMAN GLANTZ
                          WOLFSON & TOWBIN, LLC

Dated: November 8, 2010           By:   */s/ John Guzzardo*

                        Steven B. Towbin
                        Ira Bodenstein
                        John Guzzardo
                        Shaw Gussis Fishman Glantz
                        Wolfson & Towbin LLC
                        321 North Clark Street, Suite 800
                        Chicago, IL 60654
                        Tel: (312) 541-0151
                        email: jguzzardo@shawgussis.com
                        *Counsel for the Debtor*